[No. 11690. Department Two. May 1, 1914.]

CHARLES C. CULP, *Respondent,* v. WILLIAM H. KIRKMAN, *Appellant.*[1]

CONTRACTS—BREACH—WAIVER. Plaintiff having contracted with defendant to clear and level defendant's land as rapidly as possible after the first forty was ready for seeding, at the agreed price of $25 per acre, $20 of which was to be paid whenever twenty acres had been leveled and cleared, and to seed the same to Alfalfa, taking a share in the crops produced during the life of the contract, which was to run about five years, there was a breach of the contract by defendant, where the defendant, after the time arrived for seeding the first forty, denied the plaintiff the right to proceed with the preparation of more land; and the breach was not waived by the fact that plaintiff, in the preceding fall, had acquiesced in defendant's request to discontinue further grading and leveling "during the present fall at least" on account of financial stringency.

APPEAL—HARMLESS ERROR—INSTRUCTIONS. Error cannot be based upon an instruction seeming to narrow the issues, where the instructions, read as a whole, did not have that effect.

Appeal from a judgment of the superior court for Walla Walla county, Mills, J., entered March 25, 1913, upon the verdict of a jury rendered in favor of the plaintiff, in an action on contract. Affirmed.

*Reynolds & Bond,* for appellant.
*Dunphy, Evans & Garrecht,* for respondent.

PARKER, J.—This is an action to recover damages which the plaintiff claims from the defendant as the result of his breach of a contract. Trial before the court and a jury

[1]Reported in 140 Pac. 346.

resulted in verdict and judgment in favor of the plaintiff, from which the defendant has appealed.

The contract here involved, so far as we need notice its terms, reads as follows:

"This agreement made and entered into this 31st day of May, A. D. 1911, by and between William H. Kirkman, the first party and Charles C. Culp, the second party,

"Witnesseth: That the second party hereto agrees to level according to contour, and seed to alfalfa, to the satisfaction of the first party, not less than forty (40) acres of ground in the east half (½) of section twelve (12) in township eight (8) north, of range thirty (30) east of the Willamette meridian, during the summer and fall of 1911, and the spring of 1912; that subsequent thereto, as rapidly as possible, he will continue to grade and seed to alfalfa, the balance of said described land; it being agreed that where the land is too level or flat for proper flow of water, such land may be leveled and diked so that it can be properly flooded; that before July 1st, 1912, he will dig all ditches necessary to demonstrate that water can be distributed over all of said tract of land and will produce growing crop of alfalfa upon at least forty (40) acres of said premises, and place said premises in a condition that the first party hereto can make his final desert claim proof upon said premises before the officers of the land office at Walla Walla, Washington, for the purpose of securing a patent for the said land from the government of the United States . . . that he will during the existence of this agreement, in addition to the placing of the land in cultivation, care for all the crops of hay which are raised upon said premises and deliver one-half of all such hay to the first party at the railroad station designated by said first party or in the event that the hay shall be sold upon the premises, shall deliver one-half thereof to the first party thereupon; that he will do all work and labor in connection with the care and protection of all crops and in the farming of said premises . . .

"The first party hereto agrees to pay the second party for the leveling and seeding of said land and for placing the same in cultivation, the sum of twenty-five ($25) dollars per each acre of land upon which a stand of alfalfa shall be secured, $20 per acre of which payment shall be made to the

second party whenever each twenty (20) acres of land has been leveled, and the balance when a stand of alfalfa shall be secured thereon sufficient for the purpose of clipping  .  .  .

"It is further agreed that the second party shall have one-half of all crops produced upon said premises during the term of the existence of this contract.

"It is further agreed that the first party shall have the privilege of designating what lands shall be graded and the orders in which the different portions of said land shall be graded, leveled and put in cultivation.  .  .  .

"It is understood and agreed that the first party hereto owns a water right from the Burbank Power & Water Company for the irrigation of said tract of land, and that he will furnish for the irrigation of the said premises such water as he is able to obtain under the terms of said contract, it being understood and agreed as hereinbefore stated, that all ditches and flumes for the distribution of said water over said premises shall be constructed by the second party, and that all material necessary for fluming shall be furnished by the first party at the nearest railroad station.  .  .  .

"It is further agreed that this contract shall exist and continue until the first day of December, A. D. 1916, unless previously cancelled by the agreement of the parties or by operation of the law."

Respondent proceeded with the preparation of the land during the fall of 1911, until he had 126 acres thereof leveled and ready for seeding, when he was notified by appellant in writing as follows:

"Walla Walla, Wash. Nov. 4, 1911.

"Mr. C. C. Culp, Burbank, Wash.

"Dear Sir:—Because of scarcity of money I must direct that you discontinue grading and leveling on my Burbank land during the present fall at least. However, I am pleased that the work has progressed sufficiently for a good showing and hope that the weather conditions may be favorable for seeding and cultivating that which has been prepared.

"Respectfully,

"W. H. Kirkman."

Some further work was done by the respondent upon the land in the late fall of 1911, by way of seeding it to rye,

but nothing was done towards preparing any more of the land. On December 1, 1911, respondent sought from appellant further definite information as to when he would be willing to proceed with the preparation of the remaining land, respondent informing appellant that he "desired to know just what to count on." This request brought forth no definite response. About March 25, 1912, the time for seeding forty acres or more of the land to alfalfa having arrived, as the contract contemplated, respondent again requested the right to proceed with the preparation of the remaining land, offering to immediately seed to alfalfa forty acres of that which had been already prepared. Appellant denied him the right to proceed with the preparation of more land, though appellant was willing, and, we assume, desired respondent to seed to alfalfa forty acres of that which had already been prepared. Thereupon, respondent declined to proceed further under the contract, treated it as having been breached by the appellant, and a few weeks later, commenced this action to recover damages resulting from such breach. During the fall of 1911, after appellant's letter of November 4, he paid respondent for preparing the land up to that time, and some $200 in excess thereof. Just why this excess payment occurred the record does not plainly show.

The question here presented is: Was there a breach of the contract on the part of appellant? His counsel contends that there was no breach of the contract, and also that, if there was a breach, it was waived by respondent by his seeding the prepared land in the fall of 1911, after appellant's letter of November 4, and by thereafter accepting payment in excess of the amount due for preparing the land up to that time. The argument of counsel for appellant evidently proceeds upon the theory that the breach of the contract by appellant occurred, if at all, in the writing of the letter of November 4, 1911. We think this is too narrow a view to take of the question of appellant's breach of the contract. In respondent's complaint, the breach is alleged to be:

"That on November 5th, 1911, defendant ordered and notified plaintiff to cease, stop and discontinue any further work of grading and leveling of said lands mentioned in the said contract, and that said defendant continues to adhere to the said order and notice given to the plaintiff; that plaintiff called upon defendant and notified him that he was ready and willing to comply with the terms of the contract but to no avail."

Had appellant, by his letter of November 4, 1911, only caused delay in respondent's proceeding with the further preparation of the land until the seeding of forty acres of it to alfalfa, it might be argued that respondent's proceeding to seed the prepared land to rye in the fall of 1911 and accepting excess payment for that previously prepared, after the letter of November 4, should be held to be a waiver of such breach as that letter, standing alone, constituted. But that letter does not tell the whole story of the breach of the contract on the part of appellant; nor, as we interpret respondent's position, assumed in his complaint and upon the trial, is he relying thereon alone. When the time for seeding the forty acres of alfalfa arrived, and appellant offered to proceed, he was informed, in substance, that he could not do so further than to seed the land already prepared. He was plainly denied the right to proceed with preparing more land immediately upon seeding the forty acres, which he offered to do, and was thereby, we think denied one of his most valuable rights under the contract; certainly the most valuable so far as his immediate profits to come therefrom were concerned; that is, the compensation of $20 per acre for preparing the land. We have seen that, by the terms of the contract, respondent was entitled to proceed to prepare the land, and thus earn his $20 per acre therefor "as rapidly as possible" following the seeding of the first forty acres to alfalfa. Another valuable right he had in this connection was to have the whole of the land become crop-producing as early as possible, in view of his one-half interest in the crops to be taken from the land during the five succeeding seasons.

Some contention is made that the words "as rapidly as possible" mean, as the jury was instructed by the trial court, "as rapidly as the work could be done with reasonable care and diligence, and as soon as was practicable under the conditions existing in the district," and that the conditions prevailing in the district were not such as to make it practicable, without the risk of injury to the land, that all of the remaining land should be prepared for crop during the spring and summer of 1912. But, whether the conditions there existing were practicable, in view of water supply, or want thereof, and the effect of winds upon the land when the sage brush should be removed therefrom in preparing it for cultivation, presented questions of fact upon which the evidence was conflicting. We are quite clear that this involved nothing but questions for the jury. Indeed, we are of the opinion that, in its last analysis, the whole problem here presented became a question of fact as to which the jury was fully warranted in finding as it did upon the evidence presented.

Some contention is made on behalf of the appellant that the instructions given the jury established the law of the case so that the jury could not find as it did without ignoring the instructions. Some of the instructions might seem to narrow the issue of breach of the contract on the part of appellant to his letter of November 4, 1911, which letter, it is insisted, and we may concede, did not, of itself, constitute a breach of the contract. We think, however, when read as a whole, the instructions did not have the effect of so limiting the question of the breach of the contract. It seems to us that, in no event, did any prejudice result to appellant from the seeming broader view of the breach of the contract taken by the jury than the theory upon which the instructions were given.

We conclude that the judgment must be affirmed.

It is so ordered.

CROW, C. J., FULLERTON, MORRIS, and MOUNT, JJ., concur.